**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Church of Universal Love and Music and | ) |
| William D. Pritts, | ) |
| | ) |
|         Plaintiffs, | ) Civil Action No. 06-872 |
| | ) |
|   -vs- | ) |
| | ) |
| Fayette County, Fayette County Office of Planning, | ) |
| Zoning and Development, Fayette County | ) |
| Zoning Hearing Board, Lloyd Eicher, Dennis | ) |
| Nurkiewicz, Sheryl Heid, Tammy Shell and | ) |
| Mark Morrison, | ) |
| | ) |
|         Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION

Before me are Plaintiffs' and Defendants' cross-motions for summary judgment. For reasons set forth in my opinion below, I am granting in part and denying in part Defendants' motion and am denying Plaintiffs' motion in its entirety.

## I. Factual & Procedural History

This case turns on Pritts' attempt to use his nearly 150-acre tract of land ("the Pritts' property"), which was zoned for agricultural purposes when he purchased it on April 19, 2000, to hold religious services and events for adults and children, which included concerts, hereinafter referred to as "music events." (Complaint ¶¶ 12, 24 and docket entry nos. 46 & 56, ¶2). Pritts alleges that he purchased this large tract of land because: (1) the congregation of the church that he and his wife founded (Church of Universal Love and Music, hereinafter "CULM") in 1994 had grown in terms of the number of the congregants and thus, more space and larger facilities were

needed, (2) the tract of land created a natural amphitheater for the music events, and (3) this tract of land was centrally located for CULM members. (Complaint ¶23, 25-27). At some point subsequent to purchasing the property, Pritts constructed a 40' by 56' pavilion and a 50' by 100' free standing canopy on the Pritts property (hereinafter collectively referred to as the "facility"). (Complaint ¶24). Plaintiffs claim they hosted music events at the facility to accommodate CULM members' religious belief relating to music. (Complaint ¶17, 24 and docket entry nos. 46 & 56, ¶2).

According to Plaintiffs, CULM "adheres to nondenominational tenets that seek to advance spirituality, religion and love through music." (Docket entry no. 58-2, ¶9). Plaintiffs also assert that CULM's mission is to "advance religion through music and to provide a spiritual resource for all... [and] to create an environment to improve communities and the world by espousing a message of unity, love and appreciation for music, spirituality and our place in it." (Docket entry no. 58-2, ¶10). Plaintiffs claim a core religious tenet is that "religious inspiration and community are advanced by celebration of live music." (Docket entry no. 58-2, ¶10).

### A. Plaintiffs' First Petition for Special Exception, (Resolution 01-35 and 01-35/remand)

The parties agree that in April and May of 2001, pursuant to a building permit issued by Defendant-Fayette County, Plaintiffs erected the facility on the Pritts' Property which was used to accommodate various bands, speakers, and musical entertainment. (Docket entry nos. 56 & 61, ¶6). On May 16, 2001, Pritts approached the Fayette County Zoning and Hearing Board (hereinafter, "Fayette ZHB") after receiving a notice instructing Plaintiffs to cease holding music events on the Pritts' Property. (Docket entry nos. 46 & 56, ¶3). That same day, Pritts filed a petition requesting a hearing before the Fayette ZHB to consider granting a special exception to allow Plaintiffs to use the property, zoned as "A-1 Agricultural-Rural" for a "Commercial Recreation Facility." (Docket

entry nos. 47-4, 46 & 56, ¶5). In this petition, Plaintiffs stated they were requesting the special exception from the A-1 zoning restrictions, "[t]o provide entertainment and fellowship for people in the community by having music and laughter, at three to four festivals (and religious retreats) per year; and to have fund raisers for non-profit organizations." *Ibid*.

Defendants admit that on May 16, 2001, the Chief of the Fayette County Office of Zoning, David Bukovan, assisted Pritts in completing the petition for the special exception, but Pritts asserts Mr. Bukovan "directed" him on how to complete the petition. (Docket entry nos. 46 and 56, ¶6). Despite the notation on the face of this petition referencing religious retreats, Bukovan testified during his deposition that Pritts did not mention any religious use at their meeting. (Docket entry nos. 47-4, 46 and 56, ¶ 6).[1]

On June 27, 2001, the Fayette ZHB held a hearing on Plaintiffs' petition. Based on the reproduced portions of the transcript from that hearing and Pritts' affidavit, Pritts explained that the Pritts' Property would be used for "different events" such as: (1) "have bands play" (and he described the bands as blue grass, gospel, and folk), (2) "festivals for the public," (3) a gun bash for the Turkey Federation; (4) fund raisers for the fire department and some other local churches; (5) picnics; and (6) camping out overnight when music events extended over a weekend. (Docket entry no. 58-2 at ¶44, and docket entry no. 47-5, pp. 11-12). During the same public hearing, Pritts said the concerts would occur five to seven times per year on weekends between Memorial Day and Labor Day, and he said he would hold more if there was interest and if weather permitted. (Entry no. 47-6, pp. 32, 57). In addition, he testified that he would not serve alcohol nor allow the sale of

---

[1] In addition, Mr. Bukovan stated for the record at the June 27, 2007 public hearing that Plaintiffs' petition requested a special exception so his land could be used for "Music Fund-Raising, and Religious Events." (Docket entry no. 47-6, pp 7-8).

alcohol on the premises, but he would permit it to be consumed. He also explained that if a two-day "show" took place, he would allow people to camp overnight on the Pritts Property. (Entry no. 47-5, pp. 34, 44). He stated that he would cap the number of tickets sold to any one "show" at 4,000 and admitted he had no traffic impact study performed. (Entry no. 47-5, pp. 63, 139).

At this same hearing, other citizens, many of whom had property near or adjacent to the Pritts Property, testified. These citizens raised concerns ranging from: (1) a state law which requires a drug free-zone within 1,000 yards of a school; (2) public safety in the form of crowd control for the 4,000 people who might attend the music events; (3) public safety with regard to the consumption of alcohol on the premises and the risk factors associated with individuals drinking then leaving the premises late at night; (4) public safety concerning the one-lane road and one-lane bridge that could be used to access the property and the difficulty for emergency vehicles to access the property in an emergency; (5) public safety for those attending the music events in an area allegedly infested with rattlesnakes, copperheads, wolves and bears; and (6) public safety concerning the immediate neighbors if campfires started brush fires when people camped overnight on the Pritts Property in between music events. (Docket entry no. 47-5, pp. 140-185).

The Fayette ZHB denied Plaintiffs' petition for a special exception on July 25, 2001. (Docket entry no. 47-6). On August 20, 2001, Plaintiffs appealed to the Pennsylvania Court of Common Pleas of Fayette County. (Docket entry no. 47-7).

On July 21, 2003, the Court of Common Pleas rendered an opinion and order vacating the Fayette ZHB's denial of the petition for a special exception and remanded the case to Fayette ZHB for further proceedings. (Docket entry no. 47-7).

On remand, the Fayette ZHB held public hearings on November 12, 2003 and February 25,

2004, during which time they heard from Pritts and others. (Docket entry no. 47-13). During these public hearings, the Fayette ZHB president said the ZHB was not considering whether CULM was a religious organization but was only considering "the original application" (meaning, the petition for special exception from the A-1 zoning restrictions requesting to use the Pritts Property for "commercial recreational" use). On May 31, 2004, the Fayette ZHB again denied the Plaintiffs' first petition for a special exception to use the property for "commercial recreational" use. (Docket entry nos. 46 & 56, ¶39 and docket entry no. 47-7).

### B. Plaintiffs' First Petition to Rezone the Pritts' Property

On May 28, 2002, after appealing to the Court of Common Pleas, but before getting the remand decision from the Court, Pritts filed a petition for rezoning to use the Pritts Property zoned "A-1 agricultural" as a "commercial recreational facility for musical, fund raising and religious events." (Docket entry no. 47-8). On August 22, 2002, the Fayette County Commissioners' Board held a public hearing on this rezoning petition. (Docket entry 47-8). After taking testimony from Pritts and other citizens, the Commissioners denied Plaintiffs' request for rezoning from A-1 Agricultural to B-1 Business. (Docket entry no. 47-8).

### C. Fayette ZHB's and/or Fayette County's Petition for Preliminary Injunction

Before the Commissioners held their August 22, 2002 hearing and denied Plaintiffs' rezoning request, the Fayette ZHB filed petition for a preliminary injunction with Fayette County's Court of Common Pleas. The Court held a hearing on August 27, 2002 at which time it suggested the caption of the preliminary injunction petition be modified to establish that Fayette County, not Fayette ZHB, sought the injunction to enforce the existing zoning restrictions (A-1 agricultural) on the Pritts' Property. (Docket entry no. 47-10). During this hearing, the Court heard testimony from Pritts, as

well as three other citizens. (*Ibid*.) At the end of the hearing, the Court entered a preliminary injunction enjoining Pritts from operating a commercial recreational facility on the Pritts' Property. (*Ibid*.)

Pritts incorporated CULM on September 27, 2002. (Docket entry nos. 46 & 56, ¶31). After incorporating, Pritts continued to hold music events on the Pritts' Property and in lieu of charging fees for admission to these events, he asked for donations for CULM. [2] (Docket entry nos. 46 & 56, ¶33). As a result, on June 30, 2003, the Court held Pritts in contempt of the preliminary injunction. (Docket entry nos. 46 & 56, ¶34).

### D. Plaintiffs' Second Petition for Special Exception, (Resolution 04-95)

On September 2, 2004, Pritts filed a second petition for "semi-public use - religious nature" seeking permission to use the Pritts' Property for "religious fellowship." (Docket entry no. 47-17). During a February 16, 2005 hearing, members of the Fayette ZHB asked specific questions concerning the religious practices, tenets and organization of CULM. (Docket entry no. 47-18).

On March 17, 2005, the Fayette ZHB convened another hearing at which time Reverend Newell testified as the religious leader of CULM. (Docket entry no. 47-19). On April 20, 2005, the Fayette ZHB denied Pritts' second petition for special exception stating that he "did not meet the threshold for the proposed use in accordance with [Article 2] definitions and words within the definition given their customary meaning." (Docket entry no. 47-20). The Fayette ZHB ruling also noted that Plaintiffs' website "alludes to the fact that one of the basis [sic.] for the formation of [CULM] was to circumvent the zoning regulations" after the ZHB denied his first petition for special exception (resolution 01-35 and 01-35/remand). (*Ibid*.) The ZHB also cited Pritts' lack of

---

[2] The parties dispute whether these "donations" were really donations or admission fees in disguise.

credibility, alcohol consumption by adults and minors along with alleged use of narcotic substances on the Pritts Property, as well as concerns about "public health, safety, convenience, comfort, morals, prosperity and general welfare" as reasons for the denial. (*Ibid*.)

### E.  Plaintiffs' Second Petition to Rezone the Pritts' Property

On February 22, 2005, while Plaintiffs' second petition for special exception was still pending before the Fayette ZHB, Pritts filed a second petition for rezoning.  He requested that the Pritts Property, which he identified as being zoned "A-1" be rezoned to "B-1, entertainment facility - open air." (Docket entry no. 47-19).  This petition was also denied.

Despite the denial of all four of his petitions, Pritts continued to hold smaller religious-based gatherings and events on the Pritts' Property during 2006 and 2007.  He has been sanctioned for doing so in violation of the preliminary injunction.

Plaintiffs contend that the music events held on the Pritts' Property are "a central, essential and significant role in the religious practices of CULM," and as such, Plaintiffs claim it is impossible for CULM members to exercise their religion without being able to gather, associate or participate in the religion.  Plaintiffs sued Defendants for First, Fifth and Fourteenth Amendment violations and for violating the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") seeking declaratory relief and monetary damages.

Defendants filed their motion for summary judgment suggesting all claims be dismissed. Plaintiffs filed a motion for partial summary judgment on its RLUIPA claims.

### II. Standard of Review

Under F.R.Civ.P. 56, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c) (2008). An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 (3d Cir. 2001) *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting, *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)).

### III. Discussion

#### A. Plaintiffs' and Defendants' Motions for Summary Judgment

#### 1. Religious Land Use and Institutionalized Persons Act (RLUIPA) Claims

RLUIPA, enacted in 2000, targets two areas to prevent government from substantially burdening the exercise of religion: land use and institutions. In the instant matter, Plaintiffs based their RLUIPA claims on 42 U.S.C. §2000cc which protects land use as religious exercise. There are two parts to §2000cc: part "(a)" concerns "substantial burdens" while part "(b)" concerns "discrimination and exclusion." Plaintiffs' Amended Complaint alleged that Defendants violated both parts. Both Defendants and Plaintiffs moved for summary judgment on the Plaintiffs' RLUIPA

claims. Each part will be discussed in turn.[3]

**a. Part "a" - Substantial Burden**

The first part of §2000cc contains a "substantial burden" provision which Plaintiffs raise in Count II of their Amended Complaint. Specifically, Plaintiffs allege that Defendants' denial of their petitions for special exceptions from the A-1 zoning restrictions and/or the Defendants refusal to rezone the Pritts Property, violated the substantial burden section of RLUIPA (42 U.S.C. §2000cc(a)).

Under §2000cc(a), land use regulations which impose a "substantial burden" on the "religious exercise" of a person or religious assembly must further a compelling governmental interest, and be the least restrictive means of furthering that compelling interest. 42 U.S.C. §2000cc(a)(1).

In an RLUIPA case involving an incarcerated plaintiff who founded his own religion requiring him to read a certain type and number of books per day which conflicted with the State prison's restrictions on the number of books a prisoner could have in his cell, the Third Circuit adopted the Fifth Circuit's definition of substantial burden:

> [F]or the purposes of RLUIPA, a substantial burden on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 279-280, n. 5 and n.7 (3d Cir. 2007), *citing, Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir 2004). The Third Circuit then adopted a disjunctive test to be used when determining if a substantial burden exists:

---

[3] Since zoning ordinances by their nature impose individual assessment regimes, land use regulations through zoning codes necessarily involve case-by-case evaluations of the propriety of proposed activity against extant land use regulations. *Freedom Baptist Church of Delaware County v. Keay*, 204 F.Supp.2d 857 (E.D.Pa. 2002).

> For the purposes of RLUIPA, a substantial burden exists where 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other [similarly situated persons] versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington*, 497 F.3d at 280 (3d Cir. 2007).[4]

Based on the Third Circuit's definition of "substantial burden," it is clear that Defendants' actions caused Pritts and other members of CULM to substantially modify their religious behavior in violation of their beliefs – <u>if</u> holding music events is, in fact, a "religious exercise."

The Supreme Court has held that "religious exercise" involves not only a belief and profession but a performance of physical acts such as assembling with others for a worship service. *Employment Div. Dept. Of Human Resources of Oregon v. Smith,* 494 U.S. 872, 890, 108 L.Ed.2d 876, 110 S.Ct. 1595 (1990). RLUIPA itself defines "religious exercise" as "any exercise of religion whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §2000-cc5(7)(A). The Third Circuit, further interpreting §2000cc(a)(1) and the term "religious exercise" has held:

> ... RLUIPA does not permit a court to determine whether the belief or practice in question is 'compelled by, or central to, a system of religious belief' [cites omitted]. RLUIPA does permit inquiry into the sincerity of a [person's] religious beliefs [cites omitted].

*Washington*, 497 F.3d at 277. Accordingly, I make no determination whether or not Plaintiffs' belief or practice in question (*i.e.* holding music events) is compelled by, or central to, their system of religious beliefs. Instead, I look to the sincerity of Pritts' beliefs as the founder of this religion and the owner of the property in question.

---

[4] Although *Washington* turns on the section of RLUIPA pertaining to institutionalized persons (42 U.S.C. §2000cc-1), not land use, there is no reason that the Third Circuit's definition of, and test for, substantial burden would not apply across all sections of RLUIPA.

RLUIPA applies only to bona fide religions but "does not differentiate among bona fide faiths" and "confers no privileged status on any particular religious sect." *Cutter v. Wilkinson*, 544 U.S. 709, 723-724, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (cites omitted). Harmonizing this interpretation of RLUIPA by the Supreme Court in *Cutter* and the Third Circuit's interpretation of religious exercise in *Washington*, members of a group are protected under RLUIPA for the exercise of their sincere religious beliefs. Sincerity of the belief establishes a bona fide religion.

Plaintiffs argue that partial summary judgment should be granted in their favor because at least one member of Fayette ZHB (specifically, Mr. Nurkiewicz) questioned whether CULM was, in fact, a bona fide religious group and Plaintiffs believe this was an improper inquiry. After Nurkiewicz determined that CULM was not a bona fide religion, he voted against Plaintiffs' second special exception petition, and adopted Resolution 04-95, which forbade Pritts from using the Pritts Property for any religious use whatsoever. Plaintiffs also contend that Resolution 04-95 is unconstitutional and violative of RLUIPA on its face.

Nurkiewicz said that he determined that CULM did not qualify as a religious organization because Pritts' "testimony and evidence did not present to the board or me any significant amount of organic – indicators of the organic elements of a church or religious organization." (Docket entry no. 58-1, p. 56).[5]  Resolution 04-95, (which denied the second petition for special exception and

---

[5] During his deposition, Mr. Nurkiewicz also made the following statements:
Q: Did you view it at the time that ... one of the Zoning Hearing Board's functions was to determine whether or not [CULM] was a religious organization or some other form of organization?
A: Yes.
Q: And you made a determination that it was not a religious organization; is that correct?
A: Yes.
Q: And that was based on the various factors you described a moments ago, permanence, government, financial organization, dogma, and other considerations?
A: Yes.
                    *          *          *
Q: ... I think your testimony is that for a religious organization to have a – to be a real religious organization you

prohibited any religious use of the Pritts Property), indicates that "[the Fayette ZHB] did not question or doubt [Pritts'] beliefs or his methodology in the practice of his beliefs," which implies that the ZHB determined Pritts held sincere beliefs. Despite this seeming admission, Resolution 04-95 also indicates the ZHB doubted the sincerity of Pritts' beliefs because his "website postings allude to the fact that one of the basis [sic.] for formation of [CULM] was to circumvent zoning regulations..." (Docket entry no. 47-21). In short, it appears from the face of the Resolution, the Fayette ZHB could not definitively conclude whether or not Pritts held sincere beliefs. Nevertheless, the ZHB denied his second special exception petition.

Although ZHB member Nurkiewicz may have failed to properly focus his query and/or evaluation on the sentinel issue (whether Pritts and other congregants were sincere in their beliefs), Resolution 04-95 mentions this core matter. However, the language found on the face of Resolution 04-95 remains unclear as to the ZHB's ultimate conclusion on this most crucial matter.

If there is a genuine issue of fact concerning the sincerity of Plaintiffs' religious belief, this RLUIPA claim (*i.e.*, Count II of Plaintiffs' Amended Complaint), survives summary judgment. After reviewing the extremely voluminous record produced by the parties in support of their respective motions, I have found evidence which tends to support the sincerity of Plaintiffs' beliefs, as well as evidence implying that Plaintiffs are not sincere in their beliefs.[6]   Accordingly, I am

---

need to have dogma, although it need not be written; is that correct?
A: Yes. In my estimation it needs to be a consistent body of a – a systemic body of religious beliefs.
Q: Is there a number of religious beliefs...?
A: Plural. I don't think a single belief – constitutes a dogma.
(Docket entry no. 58-1, pp. 68-76)

[6] For example, Defendants support their assertion that Pritts is not sincere in his beliefs, by proffering evidence including, *inter alia*: a video from a Comedy Central television show about CULM, raw footage of a music event held on the Pritts' property, and the various petitions that Pritts filed with the County and Fayette ZHB requesting a variance and/or that his property be rezoned. Conversely, Plaintiffs have evidence in the form of

denying Plaintiffs' motion for partial summary judgment in its entirety.

Defendants argue that summary judgment should be entered in their favor because Resolution 04-95 did not impose a substantial burden on Plaintiffs, and/or Defendants had a compelling state interest in limiting Plaintiffs' use of the Pritts Property. Defendants are not entitled to summary judgment on this particular RLUIPA claim either.

As defined by the Third Circuit in *Washington,* Plaintiffs in the instant case encountered a substantial burden when they had to choose between foregoing the precepts of their religion (and evidence exists to support Plaintiffs' claims that they did and do have a sincere religious belief) or be sanctioned for violating the preliminary injunction and Resolution 04-95. Defendants argue that their governmental actions did not completely prohibit Plaintiffs from engaging in their religious exercise, noting that they could go elsewhere within the county where open air concerts were permitted and associate and worship there.

This argument fails for two reasons. First, RLUIPA specifically defines as religious exercise, the use of real property for the purpose of religious exercise. *See*, *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch ("Lighthouse II")*, 510 F.3d 253 (3d Cir. 2007), *cert. den.,* __ U.S.__,128 S. Ct. 2503, 171 L. Ed. 2d 787 (2008). Second, Resolution 04-95 on its face bars Plaintiff from <u>any</u> religious us of the Pritts Property, not just the religious exercise involving music events. Thus, the Defendants have imposed a substantial burden on Plaintiffs.

Although a substantial burden was imposed, Defendants could still prevail on their summary judgment motion with respect to this RLUIPA claim, if they produced evidence showing that the denial of the second special exception petition furthered a compelling governmental interest and that

---

hearing transcripts from various Fayette ZHB hearings, affidavits, and deposition testimony from individuals (including Pritts) who profess a sincere belief in the religion.

Resolution 04-95 was the least restrictive means of furthering that interest. Despite the fact that Resolution 04-95 lists various compelling interests such as, public safety, health, and welfare, Plaintiffs produced evidence in the form of deposition and hearing testimony which casts doubt on the public welfare assertions set forth in Resolution 04-95. For example, Nurkiewicz admitted that he never weighed the public safety issues when making his personal determination about CULM (see, docket entry no. 58-1, pp. 126-127) and Defendant Lloyd Eicher, a member of the Fayette County Zoning and Planning Board, admitted to threatening members of CULM on the Pritts' Property with a loaded gun and his motor vehicle. (See, docket entry no. 58-2). This evidence raises serious questions as to whether the Fayette ZHB denied Plaintiffs' religious use, special exception petition to further a compelling state interest or because of a general animus or distrust. In addition, completely denying Pritts the ability to use the Pritts Property for any religious purpose hardly seems to be the least restrictive means to further any real compelling state interest. Viewing the facts in a light most favorable to the non-moving party, meaning both parties, I cannot grant summary judgment as to Count II (RLUIPA - Substantial Burden) of Plaintiffs' Amended Complaint in favor of either party.

### b. Part "b" - Discrimination and exclusion

The second portion of §2000cc concerns discrimination and exclusion. (See, 42 U.S.C. 2000cc(b)). In Count III of their amended complaint, Plaintiffs assert that Defendants violated the "equal terms" portion of the "discrimination" section of RLUIPA, while Count IV of the amended complaint avers that Defendants violated the "unreasonable limitiations" portion. *See*, §2000cc(b)(1) and §2000cc(b)(3)(B), respectively.

Section 2000cc(b) states in pertinent part:

(b) Discrimination and exclusion
    (1) Equal Terms
      No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

           *                *                *

    (3) Exclusions and limits
      No government shall impose or implement a land use regulation that --
        (A) totally excludes religious assemblies from a jurisdiction; or
        (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

42 U.S.C. §2000cc(b).

Starting with the "equal terms" claim first, the Third Circuit recently held that a plaintiff asserting a claim under the RLUIPA equal terms provision must show: (1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with a (4) nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance. *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch ("Lighthouse II")*, 510 F.3d 253 (3d Cir. 2007), *cert. den.*, __ U.S.__,128 S. Ct. 2503, 171 L. Ed. 2d 787 (2008). The *Lighthouse II* Court further explained that "the relevant analysis under the equal terms provision of RLUIPA must take into account the regulation's objectives: a regulation will violate the equal terms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated *as to the regulatory purpose*." 510 F.3d at 266 (emphasis in original).

Under the facts of this case, the parties seem to agree (at least for the sake of this argument) that CULM is a religious institution or assembly and that Plaintiffs have been subjected to land use regulations thereby satisfying prongs one and two of the *Lighthouse* test. However, Defendants argue that summary judgment should be granted in their favor based on prongs three and four,

because Plaintiffs failed to produce evidence showing that the land use regulation treated Plaintiffs differently than a nonreligious assembly or institution.

Plaintiffs' brief in opposition to Defendants' motion for summary judgment fails to address this argument.[7] Even when a non-moving party (such as Plaintiffs in this case) does not address an issue or motion for summary judgment, the moving party is not automatically entitled to summary judgment. *Anchorage Assocs. v. Virgin Islands Bd of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). However, my review of the 2,000-plus pages of documentary evidence produced in support of the parties' respective motions for summary judgment has not yielded any clear example of a nonreligious assembly being treated differently.[8] After reviewing the evidence in the light most favorable to Plaintiffs, I find that no reasonable jury would be able to return a verdict for the Plaintiffs on their equal protection claim given the dearth of evidence produced on this specific issue. Accordingly, I will grant Defendant's motion as to Count III of Plaintiffs' amended complaint relating to §2000cc(b)(1), "equal terms" provision.

---

[7] To the extent the argument advanced by Plaintiffs on pages 20-22 of their brief constitutes their response to the Defendants' Equal Terms argument, Plaintiffs' argument merely makes broad statements about discrimination, cites no law, and utterly fails to address the Third Circuit's 2007 *Lighthouse II* decision requiring a plaintiff to show that the regulation in question treated a religious institution differently than a nonreligious one, when both institutions were similarly situated as to the regulatory purpose. Plaintiffs' discrimination discussion would seem to better support a claim under the "nondiscrimination" section of RLUIPA, 42 U.S.C. §2000cc(b)(2), and on page 8 of their brief, Plaintiffs specifically reference §2000cc(b)(2). However, Plaintiffs failed to raise nondiscrimination as a cause of action in their amended complaint and thus, a nondiscrimination claim is not part of this case.

[8] In support of Plaintiffs' motion for summary judgment Pritts submitted an affidavit where he states, "[w]ithin the same rural area as CULM is located, many events involving amplified music, both religious and secular in nature, are held by various groups and private individuals." (Docket entry no. 58-2, ¶33). In addition, I was able to glean from the many transcripts reproduced by the parties that the Church of Zion owns property which either abuts the Pritts Property or is close by, and at least one neighbor had a commercial business operating on her residential plot of land which also abuts, or is close to, the Pritts Property. However, there is no evidence indicating whether the church and commercial business were also located on land that had been zoned "A-1, Agriculture," nor is there evidence that shows whether the church or business/property owner applied for and received a special exception or were re-zoned by Defendants. Thus, I have found no evidence indicating the Church of Zion or the business were treated differently but were similarly situated as CULM to the regulatory purpose.

The next claim advanced by Plaintiffs, which Defendants seek to dismiss is set forth in Count IV of the amended complaint and pertains to the "unreasonable limitations" clause of RLUIPA. 42 U.S.C. §2000cc(b)(3)(B). In this claim, Plaintiffs do not claim that religious assemblies are totally excluded from the jurisdiction; rather, they assert that the Defendants' denial of its special exception petition and rezoning requests constitute unreasonable limitations on their religious assembly, institution, or structure.

Defendants argue that "[a]ny limitations" placed on Plaintiffs' assemblies were in full compliance with the Defendants' zoning laws. Clearly, the Fayette ZHB limited Plaintiffs from exercising their religion by passing Resolution 04-95. In their brief, Plaintiffs express their belief that Resolution 04-95 precludes them from using the Pritts Property for any sort of religious use. Both parties acknowledge that Plaintiffs have been sanctioned by Fayette County Common Pleas Court for using the Pritts Property in violation of a prior preliminary injunction enjoining Pritts from operating a commercial recreational facility on the Pritts' Property.

Having reviewed carefully the record and the arguments of the parties, I find that there are a variety of genuine issues of material fact relating to Plaintiffs' claim under § 2000cc(b)(3)(B). Therefore, Defendants are not entitled to summary judgment on this specific issue and Count IV of the amended complaint will survive Defendants' motion for summary judgment.

In sum, Plaintiffs' motion for partial summary judgment on their RLUIPA claims is denied in its entirety, and Defendants' motion for summary judgment on the RLUIPA claims is granted in part as to Count III - Equal Terms, but denied as to Count II - Substantial Burden and Count IV - Unreasonable Limitations.

**B. Defendants' Motion for Summary Judgment**

### 1. Plaintiffs' Free Exercise of Religion Claim - First and Fourteenth Amendments

In Count I of their amended complaint, Plaintiffs aver that Defendants deprived them of their right to freely exercise their religion by substantially burdening their ability to freely exercise their religious faith and "by discriminating against CULM because of its religious character." (Docket entry no. 21, ¶60).

The First Amendment prohibits Congress from enacting any laws "respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Consti. amend. I. The Fourteenth Amendment imposes the substantive limitations of the "Free Exercise Clause" on the legislative power of the States and their political subdivisions. *Wallace v. Jaffree*, 472 U.S. 38, 49-50, 86 L. Ed. 2d 29, 105 S. Ct. 2479 (1985).

The *Lighthouse II* case is particularly instructive on this matter since its facts are somewhat similar to the instant matter. In *Lighthouse II,* the plaintiffs began their church in one space (159 Broadway in downtown Long Branch), but then purchased nearby land at 162 Broadway which was zoned "C-1, Central Commercial." 510 F.3d at 256-257. The C-1 zoned land allowed for certain permitted uses such as an assembly hall, restaurant, bowling alley, etc., but did not permit the land to be used for a church. *Id.* at 257. The *Lighthouse II* plaintiffs submitted an application for a zoning permit to use 162 Broadway as a church, but the defendants denied the application because the proposed use was not a permitted use in the C-1 zone, and because it required prior approvals from the zoning board. *Ibid.*

The Third Circuit determined that the issue in its case was whether the defendants' redevelopment plan placed a burden on the plaintiffs' right to free exercise of religion. The Court noted, "[b]ecause religious exercise often involves conduct, prohibiting that conduct is equivalent

to prohibiting the free exercise of religion." *Lighthouse II*, 510 F3d at 273. The *Lighthouse II* Court noted the distinction between a claim under RLUIPA's definition of religious exercise and a claim that a person's rights under the Free Exercise Clause set forth in the First Amendment has been violated:

> ...unlike RLUIPA, which explicitly defines as religious exercise: "the use, building, or conversion of real property for the purpose of religious exercise," the Free Exercise Clause does not define land use as a religious exercise. [cite omitted] Indeed, several sister circuits have held that, when the plaintiff does not show that locating its premises in a particular location is important in some way to its religion and the area from which plaintiff's building is excluded is not large, there is no constitutionally cognizable burden on free exercise. [cites omitted]. We join these courts in holding that when a religious plaintiff makes a Free Exercise challenge to a zoning regulation, it must explain in what way the inability to locate in the specific area affects its religious exercise.

*Id.* at 273-274.

The Third Circuit further explained how and when a Free Exercise Challenge under the law has been met:

> We emphasize that, in requiring a plaintiff who asserts a Free Exercise challenge to a land-use regulation to articulate a reason why the inability to occupy a particular location is significant to its particular location is significant to its belief, we remain cognizant of the Supreme Court's admonition that "courts must not presume to determine the place of a particular belief in religion. . .." [cite omitted] *See also, Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) ([i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds). While we do not require a plaintiff to show the burden is *substantial* because we eschew intrusion into the religious realm, we do expect a plaintiff to articulate why it is a burden *on its religious exercise* (as opposed, for instance, to its pocketbook or its convenience ).

*Id.* at 274-275. (Emphasis in original).

Plaintiffs, in their amended complaint, and the testimony of various CULM members as well as other citizens, confirm that there is a section of the Pritts Property which forms a "natural

amphitheater." Plaintiffs claim this feature is ideal for holding music events. In addition, no one disputes that Plaintiffs obtained permission to erect a stage and pavilion along this natural amphitheater. Pritts has testified that he purchased this specific parcel of land so CULM could expand its congregation and utilize the natural amphitheater feature for the exercise of Plaintiffs' religious beliefs which involve music events.

Based on *Lighthouse II* and the evidence of record in this case, Defendants' request for summary judgment as to Plaintiffs' Free Exercise of Religion claim (Count I of the Amended Complaint) is denied.

### 2. Plaintiffs' Free Association Claim - First and Fourteenth Amendments

Count V of Plaintiffs' complaint asserts that Defendants deprived them of their right to freely associate for religious purposes on the Pritts' Property. Defendants' motion for summary judgment suggests a dismissal of this claim based upon the Third Circuit's decision in *Lighthouse Institute for Evangelism v. The City of Long Branch (Lighthouse I)*, 100 Fed. Appx. 70 (3d Cir. 2004), wherein the court upheld the denial of plaintiff-church's request for preliminary injunction because the plaintiff-church could operate as a church at its prior location, and thus, it was not likely to be able to succeed on its Freedom of Association claim.

In the instant matter, Pritts testified that he purchased the Pritts' Property because CULM's congregation was growing, the land was "centrally located" based on the areas from which CULM drew its congregants, and the shape and contours of the land created a natural amphitheater enabling Plaintiffs to accommodate the growing number of people for music events. Defendant argues that Plaintiffs can still freely associate for religious purposes by holding their music events at other locations within Fayette County that are zoned for, or permit concerts to be held.

Under the facts of this case, the Constitution guarantees Plaintiffs' right to associate for the purpose of engaging in activities protected by the First Amendment (speech, exercise of religion, etc.) as "an indispensable means of preserving other individual liberties." *Roberts v. Unites States Jaycees,* 468 U.S. 609, 618, 104 S. Ct. 3244, 82 L.Ed.2d 462 (1984). The *Roberts* Court further held:

> ...we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. See, *e. g., NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907-909, 932-933 (1982); *Larson v. Valente*, 456 U.S. 228, 244-246 (1982); *In re Primus*, 436 U.S. 412, 426 (1978); *Abood v. Detroit Board of Education*, 431 U.S. 209, 231 (1977).

468 U.S. at 622.

Relying in part on *Roberts*, the Third Circuit noted that two types of association are protected by the federal Constitution: intimate association (*i.e.*, certain close and intimate human relationships such as family relationships) and expressive association (*i.e.*, association for the purpose of engaging in activities protected by the First Amendment).[9] *Pi Lambda Phi Fraternity v. University of Pittsburgh,* 229 F.3d 435 (3d Cir. 2000). The *Pi Lambda Phi* Court went on to hold:

> In its freedom of expression jurisprudence, the Supreme Court has required a close relationship between the state action and the affected expressive activity to find a constitutional violation. In *Dale*, *Duarte*, and *Roberts*, because the state action directly affected the groups' associational activities, the Court held that the state had to show a compelling interest that justified the level of the burden imposed on the groups' expression. [Cites omitted.] . . . Because almost any government sanction could be characterized as having some indirect effect on First Amendment activities, see *Arcara v. Cloud Books, Inc*., 478 U.S. 697, 706, 92 L. Ed. 2d 568, 106 S. Ct. 3172 (1986), indirect and attenuated effects on expression do not rise to the level of a constitutional violation.

229 F.3d at 438-439.

The Supreme Court presented a three-step process to analyze expressive association claims

---

[9] Based on the facts of this case, specifically, the nature of Pritts' second petition for a special exception, his freedom of association claim falls under the rubric of "expressive association."

which roughly followed the structure that the Court employed in *Roberts* and *Duarte* to examine such claims. *Boy Scouts of America v. Dale*, 530 U.S. 640, 147 L. Ed. 2d 554, 120 S. Ct. 2446 (2000). In *Boy Scouts*, the Court first considered whether the group making the claim engaged in expressive association; second, it analyzed whether the state action at issue significantly affected the group's ability to advocate its viewpoints; and third, it weighed the state's compelling interest implicated in its action against the burden imposed on the associational expression to determine if the state interest justified the burden.

Turning to the facts of this case, the threshold matter is whether, as a matter of law, I can determine that Plaintiffs, specifically members of CULM, engage in expressive activity. Based on the evidence produced to date, ample evidence exists to support Plaintiffs' position that they, as a group, do engage in expressive association. Relying on the Third Circuit's thorough analysis and description of "expressive association" set forth in *Pi Lambda Phi*, (which noted that the Supreme Court has been "expansive" in its notion of expressive association as illustrated by *Roberts* and *Dale*),[10] I find that Plaintiffs' Free Association must survive the Defendants' motion for summary judgment because a jury could find that the Plaintiffs engage in expressive association.

Under the facts of this case, CULM's mission statement indicates that CULM is "a nondenominational interfaith based church, committed to the spiritual and mental growth of each individual by uniting the body, mind and spirit. ... Providing music to help individuals prosper by fulfilling their purpose to be happy and honest is the mission of [CULM]." (Docket entry no. 58-1).

---

[10] In *Dale*, the Supreme Court held it was "indisputable" that the Boy Scouts engaged in expressive association because its very mission was to "instill values in young people." *Boy Scouts of America v. Dale*, 530 U.S. 640, 147 L.Ed.2d 554, 120 S.Ct. 2446 (2000). In *Roberts*, the Supreme Court found that although there was a strong social component to the Jaycees, the right to expressive association was triggered by the "various protected activities in which the Jaycees engages." *Roberts*, 468 U.S. at 622.

Testimony from the public hearings held before the Fayette ZHB, makes it clear that although there exists a "strong social component" to the CULM association, (just as with the Boy Scouts and the Jaycees), CULM's mission statement could provide a jury with a basis for determining that Plaintiffs engage in expressive association.

Moreover, Resolution 04-95, prepared and adopted by the Fayette ZHB, also appears indecisive on this very point. Plaintiffs' second special exception petition requested to use the Pritts Property for "Semi-public use - Religious Nature" and further indicated, "[l]andowner wishes to permit [CULM] to use his land for religious fellowship."[11] The Fayette ZHB, after holding public hearings on the petition, denied Pritts' request to use the Pritts Property for a semi-public use and adopted Resolution 04-95 specifically stating in pertinent part:

> In consideration of the Petitioner's request the [ZHB] reviewed the Ordinance's definition of a Semi-public use and words within the definition associated with said use, as contained in Article 2, Definitions, and found that the Petitioner did not meet the threshold for the proposed use in accordance with said definitions [sic.] and the words within the definition given their customary meanings. This does not imply that the [ZHB] questions or doubts the Petitioner's religious beliefs or his methodology in the practice of his beliefs. However, the Petitioner's web site postings alludes to the fact that one of the basis [sic.] for the formation of the church was to circumvent the zoning regulations since the Petitioner was denied a very similar request by the Board as per Resolution 01-35 and 01-35 (remand).
>
>                  *                  *                  *
>
> One of the most pertinent findings of the [ZHB] is that the Petitioner did not meet the standards of the Article 1, Primary Provisions, Section 102. Interpretation, Purpose and Conflicts: which states "In interpreting and applying the provisions of this ordinance, they shall be held to minimum requirements for the promotion of the public safety, health, convenience, comfort, morals, prosperity and general welfare."

Based on these and other statements set forth on the face of Resolution 04-95, the ZHB

---

[11] The "Zoning Ordinance of Fayette County" ("Ordinance") defines "semi- public use" as "[c]hurches, Sunday schools, parochial schools, colleges, hospitals and other institutions of an educational, religious, charitable or philanthropic nature." This version of the Ordinance, which was in effect at the time Plaintiffs filed their petition and the Fayette ZHB rendered its decision, was a version with a last amended date of April 13, 2000. See, docket entry no. 49-1 (Defendants' amended exhibit "U" to their Appendix).

determined CULM fell outside its definition of "semi-public use" presumably because it did not fall within the "customary meanings" associated with the words "churches" and "institutions of a religious nature." Assuming, *arguendo*, that this was a proper evaluation of whether CULM engaged in expressive association protected by the Constitution, the next sentence seems to acknowledge the ZHB did not question the sincerity of Plaintiffs' religious beliefs (or the practice of those beliefs), but was concerned that CULM was formed to circumvent a prior ZHB ruling (Resolution 01-35 and 01-35/remand).

However, the "web site postings" mentioned in Resolution 04-95, were not found in either appendix supplied by the parties so it is impossible to determine whether this phrase refers to something Plaintiffs (including any CULM member) posted on the CULM website or something that was "posted" there by a non-member. In addition, Plaintiffs produced some evidence which tends to show that CULM existed as a private entity for several years prior to its formal incorporation with the Commonwealth of Pennsylvania.[12]

This evidence along with the affidavits from CULM members and testimony gathered during the public hearings from members and non-members of CULM, constitutes enough evidence to enable Plaintiff to argue to a jury that CULM's members were denied their right to freely associate for a religious purpose on the Pritts Property.

Since Defendants have not met their burden under the summary judgment standard with respect to the first step of the three-step analysis under the *Boy Scouts* case, the other two steps do not need to be reviewed in detail here. Nevertheless, I do note that the actions of the Fayette ZHB significantly affected CULM's ability "to advocate its viewpoints" and I remain unconvinced when

---

[12] Plaintiffs did not formally incorporate the church until 2002, which post-dated their first petition for a special exception (filed in 2001) but pre-dated their second special exception petition (filed in 2004).

weighing the ZHB's "compelling interest" against the burden imposed on the associational expression of CULM that ZHB has justified the burden.[13]

Accordingly, I deny Defendants' request to enter judgment in their favor with respect to the Plaintiffs' Free Association claim (Count V of the amended complaint).

### 3. Plaintiffs' Takings Clause Claim - Fifth Amendment

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation. *Palazzolo v. Rhode Island*, 533 U.S. 606, 606-607, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001).[14]   In *Lingle v. Chevron,* 544 U.S. 528, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005), the Supreme Court explained:

> Our precedents stake out two categories of regulatory action that generally will be deemed *per se* takings for Fifth Amendment purposes. First, where government requires an owner to suffer a permanent physical invasion of her property – however minor – it must provide just compensation. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 73 L. Ed. 2d 868, 102 S. Ct. 3164 (1982) (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking). A second categorical rule applies to regulations that completely deprive an owner of "*all* economically beneficial use" of her property. *Lucas*, 505 U.S., at 1019, 120 L. Ed. 2d 798, 112 S. Ct. 2886 (emphasis in original). We held in *Lucas* that the government must pay just compensation for such "total regulatory takings," except to the extent that "background principles of nuisance and property law" independently restrict the owner's intended use of the property. 505 U.S., at 1026-1032, 120 L. Ed. 2d 798, 112 S. Ct. 2886.

*Lingle,* 544 U.S. at 538.

---

[13] In Resolution 04-95 the Fayette ZHB expressed concerns over "the lack of security, unclear unmarked boundary lines ... to prevent trespassing onto adjacent properties, reliance on individuals in attendance for medical emergency services ... unsupported documentation of compliance with ... Noise Ordinance, the uncontrolled consumption of alcoholic beverages ... and the use of narcotic substances. ..." Denying Plaintiffs the ability to use the land for <u>any</u> religious purpose and thereby denying CULM members the ability to freely associate for that very purpose, does not strike me as the least restrictive means of furthering the ZHB's stated compelling interests.

[14] "[N]or shall private property be taken for public use, without just compensation." U.S. Consti., Amend. V.

Plaintiffs' amended complaint avers Defendants deprived CULM of its Fifth Amendment rights by "taking" the Pritts Property, presumably when Defendants denied Pritts' second petition for a special exception – the one for religious purposes – and then failed to identify the "public use" which caused it to deny the petition. Defendants claim they did not "take" the Pritts Property since they simply regulated the use of the parcel, did not deprive Pritts of all other uses, and did not create an impact on Pritts such that no reasonable economic use of the Pritts Property remains. Plaintiffs' brief does not argue that the land is worthless as a result of the denial of Pritts' petition; instead, Plaintiffs suggest that Resolution 04-95 completely prohibits CULM from holding any religious events on the Pritts Property, and thus constitutes a taking.

It is important to note that Pritts is the titled land owner of the Pritts Property, not CULM. Pritts may use the land for any approved or zoned purpose except religious purposes. Although Plaintiffs claim that the Pritts Property, zoned A-1 agricultural, is not fit to be farmed, no other evidence of this fact has been offered. Moreover, Plaintiffs bear the burden of proof to show that Resolution 04-95 denied Pritts all economically viable use of the Pritts Property. Given the lack of evidence supportive of Plaintiffs' Takings Clause claim (specifically referring to the lack of all economic viability), Defendants' motion to dismiss Count VI of Plaintiffs' amended complaint will be granted.

**4. Dismissal of Individual Zoning Board Members and Defendants Heid and Shell-Stenson**

Defendants argue that two individual Fayette ZHB members, specifically, Dennis Nurkiewicz and Mark Morrison, are entitled to absolute judicial immunity because actions taken by both of these defendants fell within their duties as ZHB members. In addition, they argue that Defendant Heid, who served as solicitor to Office of Planning, Zoning and Community

Development, and Defendant Shell-Stenson who served as director of the same office, are likewise entitled to summary judgment since neither one had any personal involvement with, or knowledge of, the alleged misconduct. Plaintiffs counter by stating that immunity (and quasi-judicial immunity) does not apply to injunctive claims, and since Plaintiffs requested equitable relief (in addition to declaratory and compensatory relief), judgment cannot be entered in favor of ZHB members Nurkiewicz and Morrison. They further argue that Defendants Heid and Shell-Stenson created, fostered, and perpetuated the religious discrimination to which CULM was allegedly subjected, and thus should not be dismissed.

First, the claims against Defendants Heid and Shell-Stenson will be dismissed. Simply put, Plaintiff offered no evidence that would support a claim against either one.

Next, the two Fayette ZHB members do have immunity under the facts presented. Generally, a judge is immune from a suit for money damages. *Mireles v. Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). The Supreme Court has expanded on this principle as follows:

> Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. . . . [O]ur cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction.

502 U.S. at 11-12 (internal citations omitted). Relying in part on *Stump v. Sparkman*, 435 U.S. 349, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978), the *Mireles* Court further explained that the first exception, ("whether an act by a judge is a 'judicial' ") relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity. *Ibid*. *See also, Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 769 (3d Cir. 2000) (task is to draw the line between truly judicial acts,

for which immunity is appropriate, and acts that simply happen to have been done by judges, such as administrative acts.) With regard to the second exception, the *Gallas* Court (also relying on *Stump, supra.*) required district courts to "distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." 211 F.3d at 769.

Courts in this Circuit have extended quasi-judicial immunity to those who perform quasi-judicial functions. *See*, *Dotzel v. Ashbridge*, 438 F.3d 320 (3d Cir. 2006) (quasi-judicial absolute immunity attaches when a public official's role is "functionally comparable" to that of a judge). In *Omnipoint Corp. v. Zoning Hearing Board of Pine Grove Twnshp.*, 181 F.3d 403 (3d Cir. 1999), the Third Circuit, relying on Pennsylvania substantive law concluded that a zoning board was judicial in nature.[15]

In *Dotzel*, *supra.,* the Third Circuit adopted a three-part inquiry to be used when determining whether a job function of a public official (such as a zoning board member) is quasi-judicial in nature: (1) Does the board member, like a judge, perform the traditional adjudicatory function, in that he decides facts, applies law, and otherwise resolves disputes on the merits? (2) Does the board member, like a judge, decide cases sufficiently controversial that in the absence of absolute immunity he would be subject to numerous damages actions? and (3) Does the board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect the constitutional rights of the parties? 438 F.3d at 325. The *Dotzel* Court also stressed that "the inquiry

---

[15] The *Omnipoint* Court held, "[u]nder Pennsylvania law, 'the zoning board has a dual role, partly legislative and partly quasi-judicial.' " 181 F.3d at 409, *citing, Urbano v. Meneses*, 288 Pa. Super. 103, 431 A.2d 308, 311 (1981) (internal quotation marks and citations omitted). The *Urbano* court summarized, with approval, decisions in other states holding that "zoning boards are acting in a quasi-judicial function when they rule upon an application for a zoning permit for a particular piece of property . . . ." *Id.*

goes to the actor's job function, as opposed to the particular act of which the plaintiff complains." *Ibid.*

Based on the evidence presented by the parties in this case, the job functions of Fayette ZHB members Nurkiewicz and Morrison – such as attending public hearings, questioning witnesses, listening to testimony from Pritts as well as other citizens, and then ultimately reaching a conclusion based on the testimony – are duties which are more in line with a judicial act, for which immunity is appropriate, as opposed to mere administrative acts. Under the three-part *Dotzel* inquiry, the evidence of record clearly shows that the job functions of both board members would lead to all three questions being answered in the affirmative.[16] As such, Nurkiewicz's and Morrison's job functions which led to their determination are afforded quasi-judicial immunity.

Plaintiffs also argue that immunity (or quasi-judicial immunity) will not protect Defendants Nurkiewicz and Morrison from Plaintiffs' §1983 claims because Plaintiffs seek injunctive relief. In *Pulliam v. Allen*, 466 U.S. 522, 540-42, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984), the Supreme Court held that judicial immunity would not bar claims against the judiciary when a plaintiff sought injunctive or declaratory relief under §1983. However, Congress amended §1983 in 1996 as part of the Federal Courts Improvement Act to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The legislative history specifically provides that the intent of Congress in promulgating this section was to restore the doctrine of absolute judicial immunity to the status it occupied prior to the Supreme Court's decision in *Pulliam. See,* S. Rep. No. 366, 104TH Cong., 2nd Sess. 1996, 1996 U.S.C.C.A.N.

---

[16] Although Plaintiffs disagree with the outcome of the members' actions, it is not the outcome of the actions upon which the *Dotzel* inquiry is based.

4202, 4216-4217. Since Congress amended the statute, the Third Circuit has granted judicial immunity even where injunctive and declaratory relief have been sought. See, *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194 (3d Cir. 2000) (noting the impropriety of § 1983 suits against a judge where a judge acts as an adjudicator); and *Chadwick v. Court of Common Pleas*, 244 Fed. Appx. 451 (3d Cir. 2007) (challenged actions of judges fell within the range of judicial action and even if such claims were not barred by judicial immunity, plaintiff failed to demonstrate an inadequate remedy at law).

Given the nature of the surviving claims in this case, Plaintiffs have adequate remedies available to them. This fact, combined with the current state of the law in this Circuit concerning judicial and quasi-judicial immunity, supports a finding of quasi-judicial immunity for these two board members.

Based on all of the foregoing, judgment will be entered in favor of Defendants Nurkiewicz, Morrison, Heid and Shell-Stenson.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Church of Universal Love and Music and | ) |
| William D. Pritts, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 06-872 |
| -vs- | ) |
| | ) |
| Fayette County, Fayette County Office of | ) |
| Planning,Zoning and Development, | ) |
| Fayette County Zoning Hearing Board, | ) |
| Lloyd Eicher, Dennis Nurkiewicz, Sheryl Heid, | ) |
| Tammy Shell and Mark Morrison, | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## **ORDER**

This 26th day of August, 2008, Plaintiffs' motion for partial summary judgment is denied in its entirety.  Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion is granted as to:

Count III - Equal Terms under RLUIPA; and

Count VI - Takings Clause.

Defendants motion is denied as to:

Count I - Free Exercise of Religion;

Count II - Substantial Burden under RLUIPA;

Count IV - Unreasonable Limitations under RLUIPA; and

Count V - Free Association.

In addition, judgment is entered in favor of Defendants Nurkiewicz, Morrison, Heid and Shell-Stenson on all counts.  A pretrial/settlement conference will be held on September 3, 2008 at 2:00 pm in Suite 3280.

BY THE COURT:

s/  Donetta  W.  Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge